UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

DEBORAH R.,[1]

      Plaintiff,

   v.                                                                1:20-CV-653 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

———————————————————

## DECISION AND ORDER

      Plaintiff Deborah R. brought this action under the Social Security Act (the "Act"), seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 12. The Commissioner responded and cross moved for judgment on the pleadings. Dkt. 14. Plaintiff replied. Dkt. 15.

      For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

———————————————

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On August 16, 2016, Plaintiff applied for benefits alleging disability

beginning August 12, 2015.  Tr. 147.[2]  Plaintiff's application was initially denied by

the Social Security Administration on October 21, 2016.  Tr. 65.  Plaintiff then filed

a written request for a hearing on November 22, 2016, Tr. 83-84, which took place

before an Administrative Law Judge ("ALJ") on August 30, 2018, Tr. 33-56.  The

ALJ issued a written decision to Plaintiff on February 13, 2019 denying her claim.

Tr. 15-29.  The Appeals Council denied Plaintiff's request for review on April 2,

2020.  Tr. 1-3.  Plaintiff then commenced this action.  Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

The scope of review of a disability determination involves two levels of

inquiry.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the Court

must "decide whether [the Commissioner] applied the correct legal principles in

making the determination."  *Id.*  The Court's review for legal error ensures "that the

claimant has had a full hearing under the . . . regulations and in accordance with

the beneficent purposes of the Social Security Act."  *See Moran v. Astrue*, 569 F.3d

108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

Second, the Court "decide[s] whether the determination is supported by 'substantial

evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

---

[2] All references to the administrative transcript (Dkt. 8) are denoted "Tr. ____."
Page numbers for documents contained the transcript correspond to the pagination
located in the lower right corner of each page.

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted).  The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted).  But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.    **Disability Determination**

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(2).  At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 416.920(a)(4)(i).  If so, the claimant is not disabled. *Id.*  If not, the ALJ proceeds to step two. *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 416.920(a)(4)(ii).  If there are no severe impairments, the

3

claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv), (e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. The ALJ then determines if the claimant can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If she can perform past work, she is not disabled and the analysis ends. *Id.* § 416.920(a)(4)(iv), (f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.*

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* § 416.920(a)(4)(v), (g); *see also*

4

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  Specifically, the Commissioner

must prove that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy." *Rosa v.*

*Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604

(2d Cir. 1986)).

## DISCUSSION

### I.   The ALJ's decision

The ALJ evaluated Plaintiff's claim for benefits under the process discussed

above.  At step one, the ALJ determined Plaintiff had not engaged in substantial

gainful activity since August 12, 2016, the date of her application.  Tr. 17.  At step

two, the ALJ determined Plaintiff had the following severe impairments: "post-

traumatic stress disorder (PTSD), generalized anxiety disorder" and "panic

disorder."  *Id.*  The ALJ also found that Plaintiff had non-severe obesity, asthma,

diabetes, and hypertension.  Tr. 18-19.  At step three, the ALJ found that none of

Plaintiff's limitations met or equaled a listed impairment in 20 C.F.R. Pt. 404,

Subpt. P, App. 1.  Tr. 19-20.  In making this determination, the ALJ considered

listing 12.04 Depressive, bipolar and related disorders, 12.06 Anxiety and obsessive-

compulsive disorders, and 12.15 Trauma and stressor-related disorders.  Tr. 19.

At step four, the ALJ determined Plaintiff had the RFC to perform "a full

range of work at all exertional levels," but with the following non-exertional

limitations: "The claimant is able to understand and follow simple directions and

instructions.  The claimant can perform simple tasks independently.  The claimant

can maintain attention and concentration as well as a regular schedule.  The claimant can learn new tasks and perform complex tasks independently and make appropriate decisions.  The claimant can adequately relate with others and appropriately manage stress within normal limits in a low stress job, which is defined as jobs involving only occasional decision making and no production rate pace work."  Tr. 22.

At the final step, the ALJ found that Plaintiff did not have any past relevant work, Tr. 27, but that she could perform other jobs in the national economy, Tr. 28.  Accordingly, the ALJ determined that Plaintiff was not disabled.  Tr. 29.

## II.   Analysis

Plaintiff makes two arguments in support of her motion.  Dkt. 12-1.  First, she argues that the ALJ "failed to properly explain and evaluate the opinion of Michelle Brick, M.S.W.," Plaintiff's mental health counselor, in formulating the mental RFC.  *Id.* at 2.  Second, she argues that the ALJ improperly substituted her lay judgment for that of a medical opinion in evaluating Plaintiff's physical impairments.  *Id.* at 25.

### A. The ALJ did not err in her evaluation of the opinion of Plaintiff's mental health counselor.

An ALJ will consider every medical opinion received in making a disability determination.  20 C.F.R. § 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  *See id.* § 416.927(a)(2), (c)(2).  "[O]nly

6

'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.  Acceptable medical sources are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2009)).

Under the applicable regulations, a social worker or counselor is not considered an "acceptable medical source" and, thus, cannot qualify as a "treating source" whose opinion may be entitled to controlling weight.  20 C.F.R. § 416.913(d). But the ALJ must at least consider the opinions of non-acceptable medical sources, or "other sources," 20 C.F.R. § 416.927(c)—such as social workers or counselors— even if the ALJ is "free to discount" such opinions "in favor of the objective findings of other medical doctors," *see Genier*, 298 F. App'x at 108-09.

Plaintiff argues that the ALJ erred in evaluating the August 23, 2018 opinion of Plaintiff's mental health counselor, Ms. Brick, and assigning greater weight to the opinions of consulting physicians.  Dkt. 12-1 at 15.

The ALJ afforded "limited weight" to Ms. Brick's opinion in formulating the mental RFC.  Tr. 26.  The ALJ assigned "considerable weight" to the opinion of "state agency psychological consultant" A. Dipeolu, Ph.D.  Tr. 25.  The ALJ gave "some weight" to the opinion of consultative examiner Susan Santarpia, Ph.D.  *Id.*

While social worker and counselor opinions may be entitled to some extra consideration based upon a long-standing relationship with the patient, *see Beckers*

7

*v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. Aug. 14, 2014) (finding non-acceptable medical source opinions may be entitled to heightened consideration but not to the weight afforded to a treating physician's opinion), an ALJ is not required to give controlling weight to such opinions.  Because social workers and counselors were considered non-acceptable medical sources at the time of filing, the ALJ's failure to give Ms. Brick's opinion controlling weight was, alone, not error warranting remand.  *See* SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006); *see also Eusepi v. Colvin*, 595 F. App'x 7, 8–9 (2d Cir. 2014) ("While opinions from other sources are properly considered in assessing claimed disability, . . . they need not be given the controlling weight accorded to opinions from treating medical sources.").

The ALJ thoroughly explained her reasoning for the weight she assigned Ms. Brick's opinion.  *See* Tr. 26 (discounting Ms. Brick's opinion because her inability to opine on Plaintiff's functional limitations suggested "a lack of familiarity with the claimant's baseline level of functioning with regard to several areas of the claimant's mental capacity for work activity" and because Ms. Brick's finding that Plaintiff was unable to work full-time "is an opinion reserved for the [C]ommissioner"); *see also* SSR 06-3p.  And the ALJ thoroughly discussed why she gave greater weight to the consultant's opinions, *see* Tr. 25-26.  The ALJ also rejected portions of the consultant's opinions that were not consistent with the evidence.  *See* Tr. 26 (ALJ found "there is some inconsistency" between Dr. Santarpia's finding of "some limitations" and her finding that those limitations were "not significant enough to interfere with [Plaintiff's] functioning on a daily basis"),

8

Tr. 25 (ALJ found Dr. Dipeolu's opinion did not account for "some later evidence not available" at the time of assessment, then determined Plaintiff was "slightly more limited" than Dr. Dipeolu opined).  Because the ALJ fully explained her consideration of the opinion evidence and did not err in assigning weight, the ALJ's consideration of the opinion evidence was proper.

Moreover, Plaintiff's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents [this Court] from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016).  In other words, to the extent Plaintiff objects to the ALJ's consideration of the opinion evidence, this Court may not "decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ]." *Fanton v. Astrue*, No. 09-CV-6586T, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011) (quoting *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986)); *see also Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983))).

**B. The ALJ did not err in evaluating Plaintiff's physical impairments.**

In formulating a claimant's RFC, an ALJ will "consider[ ] only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996).  While "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, an acceptable medical source's statement that a claimant suffers from an impairment is alone not sufficient to

establish disability, *see Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008).  In other

words, a "mere diagnosis without a finding as to the severity of symptoms and

limitations does not mandate a finding of disability."  *Id.* (citing *Green-Younger v.

Barnhart*, 335 F.3d 99, 104 (2d Cir. 2003)).

Plaintiff argues that the ALJ did not base the severity determination at step

two on medical opinion evidence and failed to obtain a medical source's assessment

of Plaintiff's physical limitations.  Dkt. 12-1, at 29.  But Plaintiff did not meet her

burden to establish that her physical impairments were severe enough to be

disabling.

The evidence that Plaintiff cites establishes that she was diagnosed with

hypertension, diabetes, and asthma and received treatment for these impairments.[3]

*See* Dkt. 12-1 at 26 (citing Tr. 354-78, 412-67).  None of those records, however,

contains evidence of relevant work-related limitations stemming from Plaintiff's

impairments that would warrant a disability finding.  *See Rivers*, 280 F. App'x at

22.  And Plaintiff did not give any indication of the nature and extent of the

functional limitations these impairments may cause.

"The claimant has the general burden of proving that he or she has a

disability within the meaning of the Act, and bears the burden of proving his or her

case at steps one through four of the sequential five-step framework established in

---

[3] Notably, the ALJ considered these impairments in her determination, Tr. 18-19,
despite Plaintiff's failure to allege them as bases for disability in her application, *see*
Tr. 160 (Plaintiff's application for benefits alleging that she suffers from a learning
disability, comprehension issues, posttraumatic stress disorder ("PTSD"),
depression, anxiety, and night terrors).

the SSA regulations." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal

quotation marks and citation omitted). This burden includes furnishing evidence

that the alleged impairment(s) "significantly limits [the claimant's] physical or

mental ability to do basic work activities." *Meadors v. Astrue*, 370 F. App'x 179, 182

(2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Plaintiff here did not

furnish any such evidence to support her allegations of disabling physical

limitations. *See* Dkt. 12-1 at 26-27 (citing various treatment records, largely from

before the alleged onset of disability, that document diagnoses, treatments, and lab

results, but do not assess her functional limitations). Because Plaintiff did not meet

her burden to prove disability at steps one through four, remand is not appropriate.

Moreover, the ALJ did not err in failing to request a medical opinion of

Plaintiff's physical limitations. In fact, ALJ's RFC determination need not perfectly

correspond with a medical opinion, so long as it is consistent with the record as a

whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). And where, as here,

the record contains sufficient evidence to assess a claimant's RFC, the ALJ need not

rely on opinion evidence at all. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108,

109-10 (2d Cir. 2020) ("Although there was no medical opinion providing the specific

restrictions reflected in the ALJ's RFC determination, such evidence is not required

when the record contains sufficient evidence from which an ALJ can assess the

claimant's residual functional capacity.") (internal quotations omitted) (quoting

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). The Court has

considered Plaintiff's remaining arguments and finds them to be without merit.

## CONCLUSION

For the above reasons, the Court GRANTS the Commissioner's motion for judgment on the pleadings (Dkt. 14) and DENIES Plaintiff's motion for judgment on the pleadings (Dkt. 12).  The Clerk of the Court will close this case.

SO ORDERED.

Dated:     June 21, 2022
           Buffalo, New York

                                        _____
                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE